### PULVER *v.* FISHBECK.

SPECIFIC PERFORMANCE—COMPROMISE AND SETTLEMENT—ORAL CONTRACT MERGED IN SUBSEQUENT WRITTEN CONTRACT.

In a suit by an adopted daughter against the executor and beneficiaries under the will of her adoptive mother for the specific performance of a claimed oral contract whereby her adoptive parents agreed to leave to her whatever

As to specific performance of contract to leave property to adopted child in consideration of his living with promisor, see note in 44 L. R. A. (N. S.) 760.

property they might possess at their deaths, the finding of the court below that said claim of plaintiff was merged in a contract between her and her adoptive mother, who survived the husband, and that it had been settled in full, *held*, justified by the record.

Appeal from Livingston; Collins (Joseph H.), J. Submitted July 10, 1923.    (Docket No. 139.)    Decided October 26, 1923.

Bill by Augusta Pulver against Lee Fishbeck, administrator of the estate of John M. Fishbeck, deceased, and others for the specific performance of a contract.    From a decree dismissing the bill, plaintiff appeals.    Affirmed.

*Louis E. Howlett* (*Pulver & Bush*, of counsel), for plaintiff.

*Willis L. Lyons* and *F. J. Shields*, for defendants.

Clark, J.    The bill was filed to enforce an oral contract, claimed to have been made by and between Martin V. Jessup and Alma Jessup, his wife, on the one part, and the plaintiff on the other.    The bill alleges that in 1870, when plaintiff was about 6 years of age, Mr. and Mrs. Jessup, having no children,—

"entered into an agreement with plaintiff, through the superintendents of the poor of said county, whereby the plaintiff was to become the adopted daughter of said Martin V. Jessup and Alma Jessup, and to give them her services during her minority, and her society and companionship so long as they lived, and in compensation therefor the said Martin V. Jessup and Alma Jessup agreed to care for, raise and educate her, to maintain the custody and control over her during her minority, and that at the time the parties should die, respectively, that they should leave to her whatever property they might possess at the time of their respective deaths."

Proceedings for adoption were then had in Ingham

county by which plaintiff took the name of Jessup and her adoptive parents declared that it was their intent to make the child their heir.     Plaintiff lived with such adoptive parents, as a daughter, was reared and cared for as such until 1892, when she married Alonzo Pulver and moved to Shortsville, New York.     Soon thereafter, Mr. and Mrs. Jessup also moved to Shortsville, and resided near the home of plaintiff.     Mr. Jessup died in 1901, but Mrs. Jessup continued to reside there, became an equal partner with Alonzo E. Pulver in a hardware business, and later, too, in a coal business, and furnished the capital for both of such businesses.

For a further statement of facts we quote from the finding of the supreme court of Ontario county, New York, in a suit commenced by Mrs. Jessup against Augusta Pulver and Alonzo E. Pulver:

"That on the 13th day of October, 1903, the plaintiff, Alma Jessop, was the owner of a house and lot in the village of Shortsville, N. Y., which was occupied by her as her dwelling and home, and on said day she was the owner of ten shares of stock of the Williamston State Bank, located at Williamston in the State of Michigan, which stock was of the par value of $1,000, represented by a certificate for said ten shares of stock then in her possession, and on said 13th day of October, 1903, the said Alma Jessop was the owner of deposits standing in her name in the following banks located at Rochester, N. Y., the said several banks and the amount of the deposit in each being as follows:

| | |
|---|---:|
| Rochester Savings Bank | $1,206.00 |
| Monroe County Savings Bank | 1,353.75 |
| Mechanics Savings Bank | 800.00 |
| Rochester Trust & Safe Deposit Co | 363.22 |
| | $3,722.75 |

and on said 13th day of October, 1903, the plaintiff Alma Jessop was a half owner of the partnership assets and business of the firm of A. E. Pulver &

Co., conducting the aforesaid hardware business and the aforesaid coal business at Shortsville, N. Y.

"That prior to the 13th day of October, 1903, the plaintiff Alma Jessop had duly made and executed in the form prescribed by law her last will and testament in and by which she left all of her property at her death to her said adopted daughter, Augusta Pulver, defendant in this action.

"That after the making of said last will and testament as aforesaid and prior to the 13th day of October, 1903, the parties to this action desired to arrange the property and affairs of the plaintiff, Alma Jessop, so that her property at her death should become the property of the defendant, Augusta Pulver, without the necessity of the probate of any will of the said Alma Jessop, and for that purpose, and on the 13th day of October, 1903, the parties to this action went to the village of Canandaigua, N. Y., and consulted Hon. James A. Robson, then a practicing lawyer in the village of Canandaigua, N. Y., and on said day at the office of Judge Robson in the village of Canandaigua, N. Y., at the request of the parties to this action Judge Robson prepared and the plaintiff executed a deed conveying the plaintiff's house and lot in the village of Shortsville, N. Y., to the defendant, Augusta Pulver, reserving to the plaintiff a life use in said premises and on said day and at the request of the parties to this action Judge Robson prepared and the plaintiff, Alma Jessop, executed a bill of sale conveying to the defendant, Augusta Pulver, all of the right, title and interest of the plaintiff, Alma Jessop, in the partnership assets of the firm of A. E. Pulver & Co., in both the hardware business and the coal business in the village of Shortsville, N. Y., and at the same time and upon the same paper the defendant, Alonzo E. Pulver, executed in writing his consent to accept the defendant, Augusta Pulver, as his partner in said firm in place and stead of Alma Jessop.

"That on said 13th day of October, 1903, in consideration of the plaintiff having executed the aforesaid deed of her house and lot in the village of Shortsville, N. Y., to the defendant, Augusta Pulver, reserving, however, to herself a life estate herein and in consideration of the plaintiff having transferred to the defendant, Augusta Pulver, all of her rights,

title and interest in the aforesaid partnership assets, the defendants, Augusta Pulver and Alonzo E. Pulver, executed and delivered to the plaintiff, Alma Jessop, an agreement in writing bearing date the 13th day of October, 1903, in and by which the said defendants jointly and severally promised and agreed to and with the said Alma Jessop to pay her on each 13th day of January, 13th day of April, 13th day of July and 13th day of October occurring thereafter and as often as such dates should occur thereafter during the natural life of the said Alma Jessop the sum of $75.00.

"That on and prior to the 13th day of October, 1903, the parties to this action had agreed that the plaintiff, Alma Jessop, should withdraw the monies standing to her individual credit and which were her individual funds in the four banks in the city of Rochester, N. Y., hereinbefore mentioned and should place such funds in the said several banks to the joint account of Alma Jessop and Augusta Pulver, 'either or survivor may draw,' and that such accounts and all monies deposited in such accounts or any similar accounts thereafter should thereafter be used by Alma Jessop, principal and interest, so far as should be necessary for the comfortable maintenance and support of the said Alma Jessop during her lifetime, and that said accounts should otherwise be maintained during the lifetime of said Alma Jessop and Augusta Pulver and until the death of one or either of them as joint accounts in their names and that the defendant, Augusta Pulver, would not withdraw during the lifetime of Alma Jessop any of the funds from said joint accounts, except for the use and benefit of Alma Jessop, and that on the death of Alma Jessop, in case Augusta Pulver survived her, the balance remaining in such joint accounts should become the property of said Augusta Pulver.

"That pursuant to the agreement between the parties to this action set forth in the preceding finding the plaintiff and the defendants went to Rochester, N. Y., on October 13th, 1903, and the plaintiff, Alma Jessop, withdrew the deposits standing in her individual name and which were her property from four Rochester banks as follows: Rochester Savings Bank, $1,206.00; Monroe County Savings Bank, $1,353.75; Mechanics

Savings Bank, $800.00; Rochester Trust and Safe Deposit Co., $363.22; making a total of $3,722.75, and at the same time and pursuant to the aforesaid agreement she re-deposited in each of the several banks above mentioned the amount of the deposit so withdrawn from that bank in a joint account in the name of Alma Jessop and Augusta Pulver with the provision that 'either or the survivor may draw,' and the defendant, Augusta Pulver, joined with her in opening said four joint accounts pursuant to the agreement aforesaid. That after said 13th day of October, 1903, from time to time the plaintiff Alma Jessop drew from said account monies for her support and maintenance in accordance with said agreement and monies were deposited from time to time in said accounts and the said joint bank accounts were changed from the banks in which they were originally opened, but from and after said 13th day of October, 1903, all joint accounts in the Rochester banks in the name of Alma Jessop and Augusta Pulver and all monies on deposit in such joint accounts in the Rochester banks were made subject to the agreement between the parties as to the use which should be made of the funds in said joint accounts and the maintenance of said joint accounts and the final disposition thereof on the death of one or either of the parties as hereinbefore stated.

"That on the morning of the 20th day of February, 1912, the plaintiff, Alma Jessop, and the defendant, Augusta Pulver, had on deposit to their joint names with the provision that 'either or survivor may draw' in the following banks located at Rochester, N. Y., the several sums set opposite the name of each bank as follows:

| | |
|---|---|
| Monroe County Savings Bank | $26.12 |
| Mechanics Savings Bank | 1,063.68 |
| Fidelity Trust Company | 2,740.45 |
| Genesee Valley Trust Company | 2,406.00 |
| Lincoln National Bank | 61.24 |
| National Bank of Commerce | 3,129.02 |
| Traders National Bank | 2,452.97 |
| Total | $11,879.47 |

"That all of said deposits in the joint accounts of the plaintiff, Alma Jessop, and the defendant, Augusta

Pulver, in the said several banks at Rochester, N. Y., amounting altogether to the sum of $11,879.47 were subject to the agreement made and entered into between the plaintiff and the defendants herein on and prior to October 13th, 1903, to the effect that the defendant, Augusta Pulver, should not withdraw from such joint accounts any money during the lifetime of the said Alma Jessop except for the use and benefit of Alma Jessop. That Alma Jessop during her lifetime should use from the funds in the joint accounts of herself and Augusta Pulver such funds, principal and interest, as might be necessary for her comfortable maintenance and support during her lifetime, and that otherwise such joint accounts should be maintained as joint accounts during the lifetime of Alma Jessop and Augusta Pulver, and until one or the other of them should die, and on the death of Alma Jessop and in case Augusta Pulver survived her that the balance remaining in such joint accounts should become the property of Augusta Pulver.

"That on February 20, 1912, the defendants by checks in one or more instances prepared by the defendant, Alonzo E. Pulver, and presented by him, but which checks were signed and executed by the defendant, Augusta Pulver, withdrew from the joint accounts of Alma Jessop and Augusta Pulver from the following Rochester banks the sums set opposite the name of each as follows:

| | |
|---|---|
| Fidelity Trust Company | $1,500.00 |
| Genesee Valley Trust Company | 1,500.00 |
| National Bank of Commerce | 2,000.00 |
| Traders National Bank | 1,500.00 |
| Total | $6,500.00 |

and that such withdrawals were made by the defendants contrary to the agreement between them and the plaintiff with regard to the maintenance of such joint accounts and with regard to the use to which the money thereof should be put during the lifetime of the plaintiff, Alma Jessop."

The suit aforesaid, commenced in 1912, was one of two suits by which Mrs. Jessup sought to recover her

property from Mr. and Mrs. Pulver, and in an answer to such suit they said in part:

"that the defendant, Augusta Pulver, was duly and lawfully adopted by the said plaintiff and her husband, Martin V. Jessop, now deceased, when she was about six years of age and that by the terms and provisions of said adoption agreement and proceedings said Martin V. Jessop and said plaintiff did each lawfully promise and agree to and with said Augusta Pulver to make the said defendant, Augusta Pulver, their lawful heir at law and next of kin and that she should at their death inherit and take all their property. That for the purpose of carrying out said adoption papers and the terms thereof and said agreement so made by said Martin V. Jessop and said plaintiff at the time of said adoption of said Augusta Pulver and in furtherance thereof and in accordance therewith and for other good and sufficient consideration paid by defendants to plaintiff, said plaintiff did"—

and here follows a recital of the transfer of certain properties into the control of the plaintiff in the case at bar.    Later, a settlement was made, of which the trial judge found:

"And on the 13th day of May, 1913, Alma Jessup, described as residing in Howell, Michigan, and Augusta Pulver and Alonzo Pulver, described as residing at Shortsville, New York, to evidence such settlement and make more certain its terms, signed a written agreement that was in effect a receipt, and also a release and discharge.    This agreement provided: *First,* that Alma releases and discharges the parties of the second part, being Alonzo and Augusta, of and from all liability to her under the 1903 agreement.    *Second,* Alma Jessup acknowledges full satisfaction of the judgment rendered upon the decision of Judge Clark in the Ontario county court.    And *third,* she released Alonzo and Augusta Pulver from all claims and demands or liabilities which she may have against them.    *Fourth,* Augusta and Alonzo E. Pulver releases and discharges Alma Jessop of and from all claims, demands or liabilities which they or either of them may have against her at the time of the execution of the agreement, and

they transfer to Alma Jessup all interest to any funds on deposit standing in the name of Alma Jessup and Augusta Pulver. They also acknowledge satisfaction of the said judgment in the Ontario county court. At the same time Augusta Pulver executed another release to Alma Jessup whereby she released and transferred to Alma Jessup all of her right, title and interest to the sums deposited in several banks to their joint account. This release recited more particularly the banks where the money was deposited as well as the amounts of such deposits.

"After this agreement was executed by the parties on the 13th day of May, 1913, Alma Jessup closed up her affairs in New York and returned to her home in Howell, and from that day until the day of her death, in 1920, she never again, as far as the testimony discloses, either saw or communicated with Augusta Pulver."

Mrs. Jessup died testate. The defendants herein appear to be the executor of her will, legatees and devisees, or their representatives, and perhaps heirs at law. The bill in the case at bar was dismissed, the court finding in part:

"From the conduct of Augusta Pulver and Alma Jessup after this settlement, and from the terms of the settlement itself, it appears to the court that upon that May day, 1913, all claims that either of these parties might have against the other were settled in full."

Plaintiff has appealed. We think it unnecessary to determine whether an enforceable oral contract was made out by the proof, and unnecessary to review the evidence adduced to establish such contract, being of the opinion that, if a contract be conceded, it appears certainly on this record that such contract, if made, merged in the 1903 agreement and was fully satisfied and discharged by the settlement of May, 1913.

The decree is affirmed, with costs to defendants.

FELLOWS, McDONALD, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred. WIEST, C. J., did not sit.